# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAGDALENE VUKELIC, | ) |
| Plaintiff, | ) |
| vs. | ) No. 12 C 9783 |
| VITAS HOSPICE, | ) |
| Defendant. | ) |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Magdalene Vukelic has sued her former employer Vitas Hospice under Title VII of the Civil Rights Act of 1964. Vukelic, who is a white woman, worked for Vitas as a registered nurse from April 2006 to December 2011, when she resigned. She then filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination. After receiving a notice of right to sue, Vukelic filed this suit. She alleges that Vitas tolerated a racially hostile work environment created by her African-American co-workers and gave her harder assignments than the African-American nurses. She contends that she was constructively discharged as a result.

Vitas moved for summary judgment pursuant to Fed. R. Civ. P. 56(a). In considering the motion, the Court considers the evidence in the light most favorable to Vukelic, the non-movant.

1. **Scope of EEOC charge and complaint**

Vitas argues, but only in its reply brief, that Vukelic is precluded from pursuing a claim of constructive discharge because she did not include it in her EEOC charge.

This argument is forfeited because Vitas did not make it in its opening brief. *See, e.g., Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014). Even if Vitas had not forfeited the argument, it would lack merit. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). But the "test for determining whether an EEOC charge encompasses the claims in a complaint . . . grants the Title VII plaintiff significant leeway," allowing her to pursue the claim so long as "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

In her EEOC charge, Vukelic stated that she had been "subjected to different terms and conditions of employment, including, but not limited to, being talked down, kept segregated from the Black staff, and given the harder assignments." Def.'s Ex. 8. These are essentially the same allegations she makes in her complaint. Compl. ¶¶ 15-16. "[I]n order to state a claim for constructive discharge, a plaintiff needs to show that her working conditions were so intolerable that a reasonable person would have been compelled to resign." *Chambers v. Am. Trans. Air, Inc.*, 17 F.3d 998, 1005 (7th Cir. 1994). Vukelic's allegations of systematic condescension, isolation, and unfavorable, disparate treatment, tolerated by her employer, are the sort of conditions that could make a reasonable employee feel compelled to resign. And one would reasonably expect an EEOC investigator looking into Vukelic's hostile work environment claim, which she made after her resignation, to look into how the work environment affected Vukelic, as well as the circumstances of the cessation of her employment with Vitas.

Vitas also contends that Vukelic's complaint in this case does not include a claim of constructive discharge.  In its reply, Vitas suggests this is a basis for dismissal.  That argument is forfeited because Vitas did not make it in its opening brief, but it is also lacking in merit.  It is true that Vukelic's complaint does not say she was constructively discharged.  Her prayer for relief, however, includes a request for lost wages.  Thus Vukelic was claiming from the outset that the work environment caused her to lose wages.   Because this most likely could have occurred only via a suspension, termination, or constructive discharge, it was sufficient to put Vitas on notice of a potential constructive discharge claim.  In addition, Vitas itself pointed out in its opening brief that  Vukelic testified at her deposition in terms that made it clear she was claiming constructive discharge.  *See* Def.'s Mem. in Support of Mot. for Summ. J. at 10-11; Def.'s Ex. 1 at 32.  Thus Vitas was plainly aware of that claim during the period for discovery.  For these reasons, Vukelic may pursue a constructive discharge claim.

Vitas also challenges the sufficiency of Vukelic's evidence of discrimination. In doing so, Vitas argues the case as if Vukelic had made a claim of discriminatory termination; it addresses whether she can prove race discrimination via either direct or indirect proof.  *See* Def.'s Mem. in Support of Mot. for Summ. J. at 4-10.  But Vukelic has not made a claim of discriminatory termination.  Rather, she claims there was a racially hostile work environment and that she was constructively discharged as a result of that environment and management's failure to address the problem.  Vitas's arguments about direct or indirect proof of discrimination simply do not fit this case.

A claim of a racially hostile work environment created by co-workers requires the plaintiff to prove that the harassment was based on her race; the conduct was severe

3

and pervasive; her work environment was both subjectively and objectively offensive; and there is a basis for employer liability. *See, e.g., Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). Vukelic has offered evidence from which a reasonable jury could find in her favor on each of these points. She says that she was repeatedly mocked by African-American co-workers; they would assist each other when needed but not her; they would refuse to perform assignments that Vukelic asked them to perform when she was in charge, sometimes using racially-oriented language; they acted differently when given an assignment by an African-American nurse; they shunned her at work, at least when they were not berating her; and so on. A jury that believed Vukelic's testimony about this—as a jury would be entitled to do—could find not simply that Vukelic subjectively found the work environment hostile but that any reasonably employee would do so; the conduct was due to her race; and it was pervasive and severe.

An employer is liable for racial harassment of an employee if the employer is negligent in its response to the harassment. *See, e.g., Chaib v. State of Indiana*, 744 F.3d 984, 985 (7th Cir. 2014). Vukelic has offered evidence from which a reasonable jury could find that she made complaints to management about the hostile work environment but that these complaints were mostly ignored and that when there was a response, it was essentially, "hang in there." This would provide a sufficient basis to impose liability on Vitas for its employees' actions. The fact that Vukelic made only one written complaint, which Vitas points out in its reply, might be a basis for Vitas to argue the jury should not believe her testimony, but it does not entitle Vitas to summary judgment. Likewise, there is no legal requirement that a party's testimony be

4

independently corroborated in order for the employee to avoid summary judgment, as Vitas suggests in its reply brief. See Def.'s Reply at 11-12.

Vitas also takes issue with the sufficiency of the evidence to support a claim of constructive discharge. As indicated earlier, to establish constructive discharge, the plaintiff must show that her work environment became so intolerable that a reasonable person would have felt compelled to resign. See *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 437 (7th Cir. 2014). Vukelic's testimony describes an atmosphere that included repeated instances of racially-motivated hostility directed at her that significantly impacted her ability to perform her job. Though a jury might find this insufficient to establish a constructive discharge claim, there is enough to permit a reasonable jury to find in Vukelic's favor.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion for summary judgment [docket no. 24]. The case is set for a status hearing on September 15, 2014 at 9:00 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. The status hearing will be held in chambers (Room 2188).

                                                                       MATTHEW F. KENNELLY
                                                                       United States District Judge

Date: September 5, 2014